Ocie MILLS; Carey C. Mills,
Petitioners–Appellants,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 93–2757.

United States Court of Appeals,
Eleventh Circuit.

Oct. 27, 1994.

Ronald W. Johnson, Kinsey, Troxel, Johnson & Walborsky, PA, Pensacola, FL, James Sherman Burling, Pacific Legal Foundation (Co–Counsel), Sacramento, CA, for appellants.

Kenneth Sukhia, U.S. Atty., Samuel A. Alter, Jr., Asst. U.S. Atty., Pensacola, FL, Anne S. Almy, Albert M. Ferlo, Jr., Andrea Nervi Ward, Environmental & Natural Resources Div., Dept. of Justice, Washington, DC, for appellee.

Paul Martin Seby, Mountain States Legal Foundation, Denver, CO, Nancie G. Marzulla, Defenders of Property Rights, Washington, DC, for amicus.

Before KRAVITCH, Circuit Judge, FAY and HENDERSON, Senior Circuit Judges.

PER CURIAM:

This is an appeal from an order entered in the United States District Court for the Northern District of Florida denying the appellants' motion to vacate or set aside their sentences brought pursuant to 28 U.S.C. § 2255, or in the alternative, for a writ of error coram nobis. *See United States v. Mills,* 817 F.Supp. 1546 (N.D.Fla.1993). For the reasons stated below, we affirm.

## I. BACKGROUND

The appellants, Ocie and Carey C. Mills, jointly owned two parcels of property located in the Spanish Landing Subdivision in Santa Rosa County, Florida, adjacent to the East Bay, an arm of the Gulf of Mexico. Earlier, in 1985, the United States Army Corps of Engineers (the "Corps") determined that a major portion of one of the lots was a wetland. At that time the land was owned by

Lewis W. Jenkins. Jenkins, who planned to build a retirement home on the property, had placed some red clay fill on the site in preparation to build a driveway. Upon discovery of this activity, the Corps issued a cease and desist order to Jenkins, which informed him that it would be necessary to obtain authorization from the Corps prior to placing fill material on real estate designated as wetlands.[1] The order instructed him to either restore the area to its former state or to obtain an after-the-fact permit from the Corps. The unrestored property was later acquired by the appellants, with full knowledge of the problems surrounding its partial designation as wetlands. They continued to deposit dirt and sand fill on the wetlands area without a permit despite receiving two additional cease and desist letters. They also impermissibly enlarged an existing drainage ditch causing it to become subject to the ebb and flow of the tide.

The appellants were eventually charged with and found criminally liable of violating the Clean Water Act, 33 U.S.C. §§ 1311(a), 1319(c) (Counts I, II, III, IV and VI), and the Rivers and Harbors Act, 33 U.S.C. §§ 403, 406 (Count V). They were each sentenced to concurrent terms of imprisonment totaling twenty-one months and to one year of supervised release. In addition, they were both ordered to pay fines of $5,000.00 and $250.00 in special assessments. As a condition of supervised release, they were required to comply with a site restoration plan prepared by the Corps and the Environmental Protection Agency. This court, in an unpublished decision, summarily affirmed their convictions and sentences on direct appeal. *United States v. Mills*, 904 F.2d 713 (11th Cir.1990).[2]

After the appellants were discharged from incarceration to supervised release, the government, through the United States Probation Office, petitioned the district court to enforce the conditions of supervised release because of the alleged failure of the appellants to comply with the restoration plan. After holding extensive hearings and personally inspecting the site, Judge Roger Vinson, who did not preside over the criminal trial, rejected the government's contention that an additional ten inches of soil needed to be removed from the wetlands portion of the property (Lot 20) to achieve restoration. Specifically, Judge Vinson found that

> the elevation of Lot 20 is now at, or in some instances, below, the elevation as it existed in December of 1985. The Government's contention that ten more inches of soil need to be removed from Lot 20 would result in turning Lot 20 into a pond, an undesirable condition. The lot is now totally denuded and ugly, in stark contrast to the beautiful lot that existed prior to 1986. Although there are detectable amounts of clay remaining on the lot, I find that the defendants have met the requirements of the site restoration plan insofar as it applies to elevation.

(R1–154–7).

At some point during the pendency of the enforcement proceedings, the Millses filed the § 2255 petition, the subject of this appeal, which was also assigned to Judge Vinson for consideration and disposition. In it, the appellants asserted four grounds for relief—first, that their convictions under the Clean Water Act are void because Congress unconstitutionally delegated its legislative authority to the Corps to define "waters of the

---

**1.** The Clean Water Act prohibits the discharge of dredged or fill materials into "navigable waters," defined in the Act as "waters of the United States," without permission from the Corps. By regulation, the Corps has construed "waters of the United States" to encompass a broad category of "wetlands." *See* 33 U.S.C. §§ 1311, 1344, 1362; 33 C.F.R. §§ 323.2(a), 328.3; *see also United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123–24, 106 S.Ct. 455, 457–58, 88 L.Ed.2d 419, 424 (1985).

**2.** The pleadings filed in the direct criminal appeal were not made a part of the record in the present appeal. According to the district court's

order denying § 2255 relief, the appellants maintained on direct appeal that (1) § 1311 is unconstitutionally vague and overly broad; (2) the district court erroneously prevented them from asserting an equitable estoppel defense; and (3) there was insufficient evidence to establish that, at the time they placed fill material on the property in issue, it was a wetland. *See Mills*, 817 F.Supp. at 1549 & n. 2, 1555–56, 1558. The appellants do not take issue with the district court's account of their assignments of error on direct appeal. We, therefore, accept it as accurate.

United States" to include an expansive view of what constitutes "wetlands"; second, that they were selectively prosecuted for exercising their First Amendment rights; third, that they were denied due process when the district court prevented them from pursuing a defense of equitable estoppel at their criminal trial; and fourth, that evidence presented in the supervised release hearing established that the property had ceased to be a wetland at the time they added the soil fill.

Judge Vinson found that the second claim was procedurally barred because the Millses failed to raise it on direct appeal. He concluded, conversely, that the third and fourth grounds had already been rejected by this court and, therefore, were not subject to further review.[3] He observed that the appellants also should have, but failed, to present earlier their constitutional argument concerning the delegation of authority to define "waters of the United States" to include "wetlands." Because this claim of error challenged the validity of the statute under which they were convicted, however, he reviewed its merits to determine whether this lapse could be excused under the fundamental miscarriage of justice exception to the procedural default doctrine. *See Mills,* 817 F.Supp. at 1549–50. After thoroughly analyzing the Clean Water Act, its legislative history and the context in which the statute was enacted, and in light of the Supreme Court's decision in *United States v. Riverside Bayview Homes,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), Judge Vinson found no unconstitutional delegation of legislative power. *See id.* at 1552–55. He therefore denied relief and this appeal followed.

## II. DISCUSSION

■ Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir.1989) (and the cases cited therein), *cert. denied,* 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990). A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. *Compare United States v. Arango,* 853 F.2d 818, 823 (11th Cir.1988) (an allegation of ineffective assistance of counsel must be raised by collateral attack as opposed to direct appeal because of the necessity to develop a factual basis for its validity through a hearing), *with United States v. Andrews,* 953 F.2d 1312, 1327 (11th Cir.) (claims of ineffective assistance may be considered on direct appeal where there is sufficient evidence on the record to resolve the issue), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 3008, 3048, 120 L.Ed.2d 882, 915 (1992). When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

**3.** In support of the appellants' claim that the property no longer constituted a wetland at the time of their ownership they relied on testimony presented at the supervised release hearing and on Judge Vinson's finding that the elevation of Lot 20 was at, or in some places below, its elevation in 1985. They argued that,

> if the lot is presently an upland, and the Defendants in some instances have gone below the elevation as it existed in December of 1985, then the property was obviously an upland in 1985. If the property was an upland in 1985, the Corps did not have jurisdiction. The Mills' [sic] have been convicted and punished for conduct which was not criminal.

(R1–159–8). In the order denying § 2255 relief, Judge Vinson stated that a significant factual development from the supervised release hearing "was a determination that, at the time in question, the subject land (Lot 20) was probably not a 'wetland' for purposes of the Clean Water Act." *Mills,* 817 F.Supp. at 1548. He nevertheless concluded that the sufficiency of the evidence with respect to whether the property was a wetland was "fully disposed of on direct appeal and, therefore, [was] not cognizable under Section 2255." *Id.* at 1549.

*Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397, 413 (1986). On the other hand, prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding. *See United States v. Hobson,* 825 F.2d 364, 366 (11th Cir.1987), *vacated on other grounds,* 492 U.S. 913, 109 S.Ct. 3233, 106 L.Ed.2d 581 (1989).

The appellants' first ground for relief, that Congress unconstitutionally delegated its duty to define "waters of the United States" to the Corps, should have been asserted on direct appeal. The district court correctly concluded nevertheless that, if this delegation of authority rendered the statute void, the appellants' procedural default could be excused under the fundamental miscarriage of justice exception because a defendant is actually innocent of a crime where the underlying statute is without force or effect.[4] *See Gonzalez v. Abbott,* 967 F.2d 1499, 1504 (11th Cir.1992). We also agree with the district court, however, that this constitutional argument lacks merit. In *Riverside Bayview Homes, Inc.,* the Supreme Court held that the Corps' interpretation of "waters of the United States" to include wetlands adjacent to navigable waters is reasonable and in keeping with the expressed intent of Congress.[5] *See Riverside Bayview Homes, Inc.,* 474 U.S. at 131–39, 106 S.Ct. at 461–65, 88 L.Ed.2d at 429–34. Further, we concur with the district court that, considering the purpose of the Clean Water Act, the context in which it was enacted and its legislative history, Congress provided sufficiently precise standards by which to judge the delegation in issue such that the appellants' challenge must fail. *See id.; United States v. Sans,* 731 F.2d 1521, 1527–28 (11th Cir.1984) (legislation which prescribes essential parameters and basic legislative policy and delegates to an administrator authority for promulgation of rules and regulations is constitutionally permissible so long as the criteria are sufficiently clear to enable Congress, the courts and the public to ascertain whether the administrator has conformed to those standards), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).

The district court properly refused to substantively address the appellants' remaining contentions. This court has already rejected the equitable estoppel argument as well as an assertion that the evidence at trial failed to establish that Lot 20 was a wetland at the time of the offenses. In support of the latter ground, the appellants rely on evidence adduced at the subsequently held supervised release hearing. Even if this evidence could support a finding that the property had lost its wetlands character prior to the appellants' ownership, a finding upon which we voice no opinion, the time to present this proof was at the trial on the merits.[6] We find no error in the district court's refusal to revisit the sufficiency of the evidence. *See Hobson,* 825 F.2d at 366. Finally, the record reveals that, even assuming that the selective prosecution ground was not procedurally barred, it is without substance.[7]

---

4. The appellants did not attempt to show cause for their procedural default.

5. The question of whether the Corps' authority properly extends to regulating the discharge of fill material onto wetlands not adjacent to bodies of open water was not before the Supreme Court, nor is it before us. *See Riverside Bayview Homes, Inc.,* 474 U.S. at 131 n. 8, 106 S.Ct. at 461 n. 8, 88 L.Ed.2d at 429 n. 8; *Mills,* 817 F.Supp. at 1551 n. 5.

6. The appellants, who represented themselves at trial, contend they were not competent in the ways of introducing expert opinion testimony on such matters. They do not state, however, that their election to proceed *pro se* was the result of an unknowing or involuntary waiver of their right to counsel.

7. This allegation is based upon a letter to the United States Attorney, dated February 12, 1987, written by a District Engineer with the Corp recommending that Ocie Mills be criminally prosecuted. (The letter does not mention Carey Mills). The appellants contend they learned of the existence of this letter pursuant to a Freedom of Information Act request which they made during their incarceration. Establishing cause for a procedural default ordinarily turns on whether a claim could not have been asserted in a timely manner due to some objective factor external to the defense. *Yeck v. Goodwin,* 985 F.2d 538, 542 (11th Cir.1993). The appellants offer no explanation for their delay in discovering this letter.

## III. CONCLUSION

In keeping with the foregoing analysis, the district court's judgment denying the appellants' motion for § 2255 relief, or in the alternative, for a writ of error coram nobis, is AFFIRMED.